## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                                )<br>           Plaintiff,                             )<br>                                                                )<br>     v.                                                     )<br>                                                                )<br>JED M. WELKER,                            )<br>                                                                )<br>           Defendant.                         ) | Case No. 13-cr-10061 |

## ORDER AND OPINION

This matter is now before the Court on Defendant Welker's Motion for Compassionate Release (Doc. 189), his attorney's memorandum in support (Doc. 195), and the Government's Response (Doc. 197). For the reasons set forth below, Defendant's Motion is DENIED.

### BACKGROUND

On May 19, 2014, Defendant was sentenced for Conspiracy to Manufacture Methamphetamine. (Doc. 57 at 1). The presentence report indicates that Defendant was one of several cooks and that co-conspirators supplied Defendant and other cooks with pseudoephedrine and other materials to produce the drugs. (*Id.* at 13). Defendant received a sentencing enhancement for creating a substantial risk of harm by manufacturing methamphetamine in an occupied residence, and he also received a career offender enhancement. (*Id.* at 14–15). The charges underlying the career offender enhancement were a previous federal conviction of conspiracy to manufacture methamphetamine and domestic battery. (*Id.* at 15). Regarding the domestic battery, the presentence report indicates that Defendant threw his girlfriend down, choked her, threatened to kill her, and bit her on the face. (*Id.* at 18). Defendant was subject to a twenty-year mandatory minimum sentence that was offset by the time he had already spent for the offense in state custody,

1

resulting in a 225-month sentence to run concurrently with the remainder of his state sentence. (*Id*.). That sentence was later reduced to 200 months imprisonment pursuant to Rule 35(b). (Doc. 146). He is currently housed at FCI Greenville in Greenville, Illinois. His scheduled release date from the Bureau of Prisons (BOP) is July 16, 2030.

On October 13, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (Doc. 189). The Court appointed the Federal Public Defender's Office to represent him, and on October 28, 2020, appointed counsel filed a memorandum in support of Defendant's Motion. (Doc. 195). On November 9, 2020, the Government filed its Response in opposition to compassionate release. (Doc. 197). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the BOP file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP.

*United States v. Gunn*, ---F.3d----, 2020 WL 6813995, at *1 (7th Cir. Nov. 20, 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 2. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling release." *Id*.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines analysis provides a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit,

this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1 (A)(ii)(1).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

**DISCUSSION**

Defendant urges the Court to find extraordinary and compelling reasons exist for his compassionate release based upon a combination of factors, including the fact that he would be

subject to a lower mandatory minimum sentence, changed family circumstances, and the risks he faces due to the coronavirus.

### A. Eligibility for compassionate release related to Defendant's health.

The parties agree that Defendant exhausted his BOP administrative remedies, and the Government focuses its response on the merits of Defendant's claims. The Government argues that Defendant does not have any medical diagnosis that the CDC has identified as potentially elevating his risk for COVID-19. Defendant also does not point the Court to anything in his medical records that indicates he is at a heightened risk. In fact, he describes himself as "relatively healthy." (ECF No. 189 at 25). He also contracted COVID-19 in August and did not develop a severe illness in response. His medical records suggest that he was asymptomatic. Defendant largely makes general claims about the outbreak becoming more severe and suggests that his facility has had more cases than other facilities.

However, as previously stated, "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release." *See e.g., United States v. Melgarejo*, 2020 WL 2395982 (C.D. Ill. May 12, 2020). There is nothing that suggests that anything in his medical history places him at a higher risk related to coronavirus. While his facility appears to have experienced more COVID-19 cases than other facilities, that fact alone does not compel release of an inmate without an elevated risk of harm from the virus. Therefore, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release based on his health.

### B. In these circumstances, the amendment of § 841(b) is not a basis to grant Defendant compassionate release.

Defendant further argues that the Court should grant his Motion due to his unusually long sentence and a subsequent change to the law that would subject him to a lower mandatory

5

minimum sentence. Defendant argues that the First Step Act's changes to 21 U.S.C. § 841(b) altered the sentencing enhancement for having a prior felony conviction from a 20-year mandatory minimum to a 15-year mandatory minimum. While the Defendant acknowledges that the changes to § 841(b) are not retroactive, he asserts that the Court can still grant compassionate release on that basis. He points to numerous court cases where the district courts have granted compassionate release due to changes in the First Step Act.

The Court is not persuaded that this factor should be a strong consideration in granting a motion for compassionate release because the determination of the retroactivity of a statutory provision is made by Congress. *Dorsey v. United States*, 567 U.S. 260, 274 (2012). It is generally presumed that a change to criminal penalties does not apply retroactively, unless Congress provides otherwise. *Id.* at 272; *see also Middleton v. City of Chicago*, 578 F.3d 655, 662 (7th Cir. 2009) ("a court should not apply a newly enacted statutory provision retroactively unless Congress has clearly mandated such an extension."). The controlling statute, 1 U.S.C. § 109, provides: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." Here, Congress stated its intent explicitly that "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b). Given that Defendant was sentenced before 2018 when the bill was enacted, Section 403 does not apply in this case, and Defendant's sentence remains intact. The Court is not persuaded that the statute related to compassionate release can be used to avoid Congress's explicit language and find that

this statute is retroactive for some defendants. Congress knows how to make a sentencing change retroactive; it did not do so here. This Court is not inclined to reduce a sentence based upon the fact that Congress has now lowered the penalty for the crime without clear language indicating that it is appropriate for the Court to do so.

While the Seventh Circuit has not directly addressed this issue, another judge from this district addressed a similar issue where the defendant would have faced a lower guideline sentence range because, under *Johnson v. United States*, 576 U.S. 591 (2015), one of his predicate offenses would no longer qualify as a crime of violence such that he would be subject to the career offender guidelines. *United States v. Thomas*, No. 10-30046, 2020 WL 4917730, at *1 (C.D. Ill. Aug. 21, 2020). There, the court considered the fact that the defendant's sentence would likely be over had he not been subject to the career offender guidelines as one factor in considering Defendant's request for compassionate release. The court also considered the COVID-19 outbreak at the defendant's institution, the defendant's lack of risk factors related to COVID-19, and that the defendant had little time remaining on his sentence. *Id*. The court still concluded that the defendant had not shown extraordinary and compelling circumstances to warrant compassionate release.

The Court acknowledges that other district courts are split on the issue of whether changes in the law that would result in a substantially lower sentencing guideline range or a substantially lower mandatory minimum is an extraordinary and compelling justification for compassionate release. Indeed, some defendants were subject to mandatory minimums or guideline ranges that are decades longer than the current sentencing scheme would require. Some district courts find that the result is so unfair that they believe it is an extraordinary and compelling reason to reduce defendants' sentences under the compassionate relief statute. *See e.g. United States v. Millan*, 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020); *United States v. Decator*, 2020 WL 1676219 (D. Md. Apr.

6, 2020*); United States v. Haynes*, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020); *United States v. Marks*, 2020 WL 1908911, at *7 (W.D.N.Y. Apr. 20, 2020). These cases are not binding on this court, and many district courts agree that if Congress wished to empower the courts to reduce sentences on that basis, it needed to do so explicitly. *See e.g.*, *United States v. Neubert*, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) ("a reduction under § 3582(c)(1)(A) is not warranted because the disparity between Mr. Neubert's actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.' Instead, it is what the plain language of § 403 [of the First Step Act] requires."); *United States v. Pitts*, 2020 WL 1676365, at *7 (W.D. Va. Apr. 6, 2020) (refusing to commit an inappropriate "end-around" the non-retroactivity of Section 403 of the First Step Act, that amended 924(c) penalties).

Defendant urges the Court to consider the fact that he would be subject to a lower mandatory minimum sentence today as one of several factors. Because Congress has indicated that the relevant statute is not retroactive and because the previous compassionate relief guidelines focus on individualized health and family circumstances, this Court is unable to conclude that Defendant has presented an "extraordinary and compelling" reason to qualify him for compassionate release. The Court is further unpersuaded that considering his efforts to rehabilitate himself are sufficient reason to release him. He further asserts that he is the only living parent to one of his children who needs him, but the record reflects that child was adopted by a family member several years ago and the situation does not appear to have changed significantly while Defendant has been incarcerated.

### C. The Court is unable to conclude that Defendant would not be a danger to his community.

In any event, Defendant has not demonstrated that he would not be a danger to his community. Before releasing a defendant, the Court gives great weight to whether a defendant is

a danger to the community. *See* U.S.S.G § 1B1.13. Based on Defendant's criminal history and disciplinary record, the Court is unable to conclude that Defendant will not be a danger to others.

Defendant has a significant criminal history, including acts of physical violence. Most recently, he was disciplined in 2018 for assaulting another inmate and possessing a dangerous tool in the same year. In 2011, he was charged with domestic battery after he head butted his girlfriend, pinned her to the bed, choked her, held her down by the throat, and threatened to kill her. (Doc. 57 at 18). A short time after the incident, he violated an order of protection. Before the domestic violence incident, he committed a felony aggravated battery for striking an individual in the face and causing great harm. (*Id*. at 17). He also received a sentencing enhancement related to this offense for manufacturing methamphetamine in an occupied residence due to the danger of the manufacturing process.

While Defendant argues that he has worked hard to prepare himself for life after release by taking dozens of classes, that is not enough in light of his history of violent and otherwise dangerous behavior. Defendant has nearly ten years left on his sentence and the Court is not persuaded that even considering the various factors Defendant presents that he has demonstrated an extraordinary and compelling reason for release.

## CONCLUSION

For the reasons set forth above, it is ORDERED that Defendant's Motion [189] is DENIED.

ENTERED this 4th day of December, 2020.

                                            /s/ Michael M. Mihm
                                            Michael M. Mihm
                                        United States District Judge